ORIGINAL FILED

MAR 2 8 2005

LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Julius B. Robinson, | ) | C. A. No. 2:04-21882-27AJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Jo Anne Barnhart, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Julius B. Robinson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits on January 31, 2001, alleging that he became unable to work on May 16, 1999, due to Meniere's disease, a herniated disc, and arthritis. The application was denied initially and on reconsideration by the Social Security Administration. On December 31, 2001, the plaintiff requested a hearing. The administrative law judge before whom the plaintiff appeared with counsel considered the case de novo, and on December 27, 2002, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. On March 6, 2003, the

Appeals Council vacated the administrative law judge's decision and remanded the case for further proceedings.

On June 23, 2003, a supplemental hearing was held before an administrative law judge at which the plaintiff appeared with counsel and Kathryn Mooney, a vocation expert. Thereafter, on December 23, 2003, the administrative law judge found that the plaintiff was not under a disability as defined by the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 1, 2004.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant met the disability insured status requirements of the Act on May 16, 1999, the alleged date of disability onset, and continues to meet them through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged disability onset date.
>
> 3. The medical evidence establishes that the claimant has "severe" degenerative disc disease, arthritis and Meniere's disease, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.
>
> 4. For reasons explained in the body of this decision, the testimony regarding the severity of the claimant's impairments and resulting functional limitations was not persuasive.
>
> 5. The claimant retains the residual functional capacity to perform "medium" work subject to the

2

>    additional limitations discussed in the body of
>    this decision.
>
>    6.   The claimant is unable to perform his past
>    relevant work.
>
>    7.   The claimant is "approaching retirement age",
>    and he has a high school education.
>
>    8.   Based on an exertional capacity for "medium"
>    work, and the claimant's age, education, and work
>    experience, section 404.1569 and Rule 203.07,
>    Table No. 3, Appendix 2, Subpart P, Regulations
>    No. 4 would direct a conclusion of "not disabled".
>
>    9.   Although the claimant is unable to perform
>    the full range of "medium" work, he is capable of
>    making the adjustment to work which exists in
>    significant numbers in the national economy.  Such
>    work includes employment as a laundry labeler, an
>    order checker, a park aide, a gate tender, an
>    amusement attendant and a cashier II.  A finding
>    of "not" disabled is therefore reached within the
>    framework of the above cited rule.
>
>    10.  The claimant was not under a "disability" as
>    defined in the Social Security Act, at any time
>    through the date of this decision 20 CFR
>    404.1520(f).

Tr. 22-23.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability."  42 U.S.C. § 423(a).  Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

>    the inability to engage in any substantial gainful
>    activity by reason of any medically determinable
>    physical or mental impairment which can expected
>    to result in death or which has lasted or can be
>    expected to last for at least 12 continuous
>    months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

### ARGUMENT

By brief, the plaintiff argued that the administrative law judge committed reversible error when he "incorrectly based his decision on one medical report done by Plaintiff's orthopaedic physician, Dr. Fleischer" rather then giving enough weight to the disability opinion of Dr. Drago who treats the plaintiff for Meniere's disease, and the reports of Drs. Hegler and Timmons, the plaintiff's family physicians. Further, the administrative law judge should have found that the plaintiff was capable of light work rather than medium work, in which case Rule 202.00 of Table 2 of the grids would have directed a finding of disability. Lastly, the administrative law judge should have considered the combined effect of the plaintiff's impairments in assessing his ability to work.

### TREATING PHYSICIAN'S RULE

The plaintiff first and most important argument was that the administrative law judge erred in not accepting the disability opinion of treating physician, Dr. Drago.

Circuit precedent does not require that a treating physician's testimony "be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In fact, 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) both provide, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by

5

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight."

By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. See, Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (quoting Hunter at 35).

The Fourth Circuit Court of Appeals has held that "the opinion of a claimant's treating physician must be given great weight." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). It has also held, however, that the administrative law judge may disregard a treating physician's opinion if there is persuasive contradictory evidence. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986). While the Commissioner is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983).

Yet the Fourth Circuit Court of Appeals has also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record. Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971). Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a

6

determination coming down on the side of the non-examining, non-treating physician should stand. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Here, the plaintiff began seeing Dr. Drago on October 30, 2002, for Meniere's disease and allergic rhinitis. Before he went to Dr. Drago, he was treated by Benjamin Paysinger, M.D., of Palmetto Ear, Nose, and Throat in January 1997, for complaints of seasonal dizziness. His treatment notes indicated that in July 1998 Plaintiff reported seasonal dizziness and intermittent vertigo (Tr. 246). A CT scan of Plaintiff's head was normal, but an ENG revealed vestibular dysfunction (Tr. 246). Plaintiff was prescribed medication including Antivert, which was effective in improving his symptoms (Tr. 247). In July 1999, Plaintiff reported that he had been doing well until recently when he experienced worsening dizziness; however, he reported that he "worked through it" and that he was much improved (Tr. 248). In January 2000, Plaintiff reported that he had no vertigo and that his symptoms were well controlled with medication (Tr. 249). Plaintiff did not receive any further treatment until November 2000, when he reported he had no problems with vertigo. (Tr. 249). In July 2001, Plaintiff reported a flare up of vertigo but that he was using his medicine and felt better. (Tr. 250).

Plaintiff presented to Jonathan Hegler, M.D., on August 20, 2002, for his Meniere's disease (Tr. 304). Plaintiff reported that he was doing well and denied any serious dizziness. (Tr. 304).

In October 2002 Plaintiff first saw Dr. Drago, of Central

7

ORIGINAL FILED

MAR 2 8 2005

LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Julius B. Robinson, | ) | C. A. No. 2:04-21882-27AJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Jo Anne Barnhart, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Julius B. Robinson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits on January 31, 2001, alleging that he became unable to work on May 16, 1999, due to Meniere's disease, a herniated disc, and arthritis. The application was denied initially and on reconsideration by the Social Security Administration. On December 31, 2001, the plaintiff requested a hearing. The administrative law judge before whom the plaintiff appeared with counsel considered the case de novo, and on December 27, 2002, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. On March 6, 2003, the

Appeals Council vacated the administrative law judge's decision and remanded the case for further proceedings.

On June 23, 2003, a supplemental hearing was held before an administrative law judge at which the plaintiff appeared with counsel and Kathryn Mooney, a vocation expert. Thereafter, on December 23, 2003, the administrative law judge found that the plaintiff was not under a disability as defined by the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 1, 2004.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1.  The claimant met the disability insured status requirements of the Act on May 16, 1999, the alleged date of disability onset, and continues to meet them through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity since the alleged disability onset date.
>
> 3.  The medical evidence establishes that the claimant has "severe" degenerative disc disease, arthritis and Meniere's disease, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.
>
> 4.  For reasons explained in the body of this decision, the testimony regarding the severity of the claimant's impairments and resulting functional limitations was not persuasive.
>
> 5.  The claimant retains the residual functional capacity to perform "medium" work subject to the

2

>   additional limitations discussed in the body of
>   this decision.
>
>   6.  The claimant is unable to perform his past
>   relevant work.
>
>   7.  The claimant is "approaching retirement age",
>   and he has a high school education.
>
>   8.  Based on an exertional capacity for "medium"
>   work, and the claimant's age, education, and work
>   experience, section 404.1569 and Rule 203.07,
>   Table No. 3, Appendix 2, Subpart P, Regulations
>   No. 4 would direct a conclusion of "not disabled".
>
>   9.  Although the claimant is unable to perform
>   the full range of "medium" work, he is capable of
>   making the adjustment to work which exists in
>   significant numbers in the national economy. Such
>   work includes employment as a laundry labeler, an
>   order checker, a park aide, a gate tender, an
>   amusement attendant and a cashier II. A finding
>   of "not" disabled is therefore reached within the
>   framework of the above cited rule.
>
>   10. The claimant was not under a "disability" as
>   defined in the Social Security Act, at any time
>   through the date of this decision 20 CFR
>   404.1520(f).

Tr. 22-23.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

>   the inability to engage in any substantial gainful
>   activity by reason of any medically determinable
>   physical or mental impairment which can expected
>   to result in death or which has lasted or can be
>   expected to last for at least 12 continuous
>   months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

## ARGUMENT

By brief, the plaintiff argued that the administrative law judge committed reversible error when he "incorrectly based his decision on one medical report done by Plaintiff's orthopaedic physician, Dr. Fleischer" rather then giving enough weight to the disability opinion of Dr. Drago who treats the plaintiff for Meniere's disease, and the reports of Drs. Hegler and Timmons, the plaintiff's family physicians. Further, the administrative law judge should have found that the plaintiff was capable of light work rather than medium work, in which case Rule 202.00 of Table 2 of the grids would have directed a finding of disability. Lastly, the administrative law judge should have considered the combined effect of the plaintiff's impairments in assessing his ability to work.

## TREATING PHYSICIAN'S RULE

The plaintiff first and most important argument was that the administrative law judge erred in not accepting the disability opinion of treating physician, Dr. Drago.

Circuit precedent does not require that a treating physician's testimony "be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In fact, 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) both provide, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by

5

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight."

By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. See, Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (quoting Hunter at 35).

The Fourth Circuit Court of Appeals has held that "the opinion of a claimant's treating physician must be given great weight." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). It has also held, however, that the administrative law judge may disregard a treating physician's opinion if there is persuasive contradictory evidence. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986). While the Commissioner is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983).

Yet the Fourth Circuit Court of Appeals has also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record. Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971). Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a

6

determination coming down on the side of the non-examining, non-treating physician should stand. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Here, the plaintiff began seeing Dr. Drago on October 30, 2002, for Meniere's disease and allergic rhinitis. Before he went to Dr. Drago, he was treated by Benjamin Paysinger, M.D., of Palmetto Ear, Nose, and Throat in January 1997, for complaints of seasonal dizziness. His treatment notes indicated that in July 1998 Plaintiff reported seasonal dizziness and intermittent vertigo (Tr. 246). A CT scan of Plaintiff's head was normal, but an ENG revealed vestibular dysfunction (Tr. 246). Plaintiff was prescribed medication including Antivert, which was effective in improving his symptoms (Tr. 247). In July 1999, Plaintiff reported that he had been doing well until recently when he experienced worsening dizziness; however, he reported that he "worked through it" and that he was much improved (Tr. 248). In January 2000, Plaintiff reported that he had no vertigo and that his symptoms were well controlled with medication (Tr. 249). Plaintiff did not receive any further treatment until November 2000, when he reported he had no problems with vertigo. (Tr. 249). In July 2001, Plaintiff reported a flare up of vertigo but that he was using his medicine and felt better. (Tr. 250).

Plaintiff presented to Jonathan Hegler, M.D., on August 20, 2002, for his Meniere's disease (Tr. 304). Plaintiff reported that he was doing well and denied any serious dizziness. (Tr. 304).

In October 2002 Plaintiff first saw Dr. Drago, of Central

7

Carolina Ear, Nose, and Throat, and Audiology Center. Plaintiff reported that he took medication for symptoms of vertigo (Tr. 298). Plaintiff had a follow-up appointment with Dr. Drago on November 20, 2002, at which he reported only one episode of vertigo (Tr. 298).

Plaintiff had a follow-up appointment with Dr. Hegler on November 22, 2002. Plaintiff had no major complaints, and Dr. Hegler reported that Plaintiff's Meniere's disease was stable (T.326). On December 2, 2002, Plaintiff presented to Dr. Hegler with complaints of lower backache and dizziness. (Tr. 306). Plaintiff reported that his back pain was relieved by analgesics and that medication usually controlled his dizziness. (Tr. 306).

On January 29, 2003, Dr. Drago noted that a recent brain MRI was essentially negative and that Plaintiff had only one or two episodes of vertigo approximately four weeks prior. (Tr. 324). Next, on April 8, 2003, Dr. Drago opined in a letter "To Whom It May Concern" that Plaintiff was totally disabled secondary to his Meniere's disease. (Tr. 319). This is the doctor's opinion of total disability which the plaintiff believes was not accorded appropriate weight by the administrative law judge.

The administrative law judge acknowledged that Dr. Drago opined that Plaintiff was totally disabled secondary to Meniere's disease. However, consistent with regulations, the administrative law judge gave specific reasons why he discounted Dr. Drago's opinion and gave it very little weight (Tr. 20). The evidence of record regarding Plaintiff's Meniere's disease simply does not support a finding of disability. Plaintiff was

8

intermittently treated for symptoms of dizziness by Drs. Paysinger, Hegler, and Drago from 1997 through 2003. (Tr. 246-250, 298, 304, 306). On several occasions, Plaintiff's physicians indicated that medication helped relieve symptoms (Tr. 247, 249. 250). Further, Plaintiff himself often reported that medication helped his symptoms, and that he had no serious dizziness.

Additionally, case law requires that the Commissioner accord controlling weight to a treating physician's opinion concerning the severity of a claimant's impairments only if the opinion is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). Treatment notes indicated that Plaintiff's Meniere's disease was successfully treated in a conservative manner and that no significant restrictions were placed on his activities, which is counter-indicative of a disabling impairment. Moreover, in sharp contrast to his letter of April 8, 2003, Dr. Drago's treatment notes were fairly benign, never mentioned the severity of Plaintiff's condition, and do not support his conclusion that Plaintiff was disabled. It appears that Dr. Drago's opinion was not entitled to any special significance and the administrative law judge properly discounted it.

### SYNERGISTIC EFFECT

Plaintiff made a one sentence statement in his brief that the administrative law judge did not consider the impact of

Plaintiff's impairments in combination upon his ability to work. (Pl. Brief at 6).

Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Contrary to Plaintiff's assertion, the administrative law judge did consider the combination of Plaintiff's impairments in making his decision. The administrative law judge specifically noted that he considered all of the evidence of record in determining Plaintiff's residual functional capacity (Tr. 21) and the plaintiff has not carried his burden to show otherwise.

## **RESIDUAL FUNCTIONAL CAPACITY**

The plaintiff also argued that the administrative law judge should have found that he was capable of light work rather than medium work. However, the plaintiff did not argue this point based on an alleged lack of substantial evidence of record, but rather made an equitable argument that if the plaintiff had been found capable of performing only light work, the grids would have

10

directed a finding of disabled. The court is bound to apply the substantial evidence rule and reverse the administrative law judge only if the record does not contain substantial evidence to support a particular finding. Therefore, the court should decline the plaintiff's invitation to reverse the administrative law judge's finding that the plaintiff can perform medium work with restrictions.

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the decision of the Commissioner be affirmed.

Respectfully submitted,


S/Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina,
March 28, 2005